**STATE of North Dakota, Plaintiff and Respondent,**

v.

**Charles Junior ANKNEY, Defendant and Appellant.**

Cr. No. 398.

Supreme Court of North Dakota.

Feb. 8, 1972.

Rehearing Denied March 29, 1972.

---

Robert A. Feidler, Grand Forks, and Kenneth R. Pearson, Minneapolis, Minn., for defendant and appellant.

Helgi Johanneson, Atty. Gen., Bismarck, Thomas B. Jelliff, State's Atty., Thomas L. Zimney, Asst. State's Atty., Grand Forks, for plaintiff and respondent.

PAULSON, Judge.

The defendant, Charles Junior Ankney, has appealed to this court from the verdict of guilty and final judgment upon a conviction of the crime of burglary in the Grand Forks District Court, as well as from the order denying the motions for a new trial and for judgment notwithstanding the verdict.

The relevant facts leading to the arrest of Ankney are:

—Edgar P. Beyers, the secretary-manager of the Grand Forks Elks Lodge, at approximately eleven o'clock on the evening of Sunday, November 30, 1969, was making a routine check of the lodge's building when he discovered that the building had been entered. Beyers immediately returned to his home, which was a short distance away, and summoned the Grand Forks police. The first two policemen to arrive at the scene were Officer Walter Mitchell, who positioned himself near the southwest corner of the Elks building, and Officer Dennis Jenson, who approached the building from its north side.

—Officer Jenson testified that as he approached the north door of the Elks building he saw two men, each carrying wrecking bars, coming out through the north door. Upon seeing Officer Jenson the two men went back into the building. Thereupon Officer Jenson by means of his car radio advised Officer Mitchell that there were two men in the building. Shortly thereafter, Officer Jenson heard three shots coming from the southwest side of the building and he proceeded to investigate the shots. Upon reaching the southwest corner of the building, Officer Jenson found Officer Mitchell holding his gun on the defendant, Ankney. Officer Mitchell testified that he heard Officer Jenson's radio alert as to the presence of the two men in the building and that he then saw two men fleeing from the building through the southwest door. Upon being ordered to stop, one of the suspects—Ankney—stopped and the other suspect fled toward the parking lot on the east side of the building. Officer Mitchell fired three warning shots, but the second suspect did not stop and to this date has not been apprehended.

—Shortly after Officer Jenson arrived at the southwest door of the Elks building, Sergeant Norman Hinsz of the Grand Forks Police Department reached the scene and proceeded to search Ankney for weapons and to advise Ankney that he was under arrest. Ankney then was handcuffed and was laid prone on the ground. Leaving Officer Mitchell with Ankney, Officer Jenson and Sergeant Hinsz went to the north side of the building and entered it through the doors which had been jimmied open and left slightly ajar by intruders. While in the process of searching the

building, the police officers found the lock broken on an office door and the office safe owned by the Elks Club loaded on and tied to a dolly. They also found two wrecking bars on the floor, just inside the southwest door from which Ankney and his companion had fled.

Ankney argues on appeal that there was no evidence to connect him with the wrecking bars or with the broken doors or with the safe, and that there was insufficient evidence presented to the jury to justify a finding of guilty. He argues that no fingerprint evidence was introduced at his trial and that Officer Jenson could not identify Ankney as one of the intruders who was attempting to leave the Elks building through the north door. Ankney contends that there was only circumstantial evidence revealed at the trial and that such evidence was insufficient to overcome the presumption of his innocence.

The evidence presented by the State consisted solely of the testimony of Mr. Beyers, Officers Mitchell and Jenson, and Sergeant Hinsz; photographs of the interior of the Elks building portraying the damage to the broken door lock in the secretary-manager's office, the location of the safe loaded on the dolly, the jimmied entrance doors, and the two crowbars which were located near the southwest door of the building; as well as an architect's layout of the Elks building and its parking lot. No fingerprint evidence was introduced. The defense did not call Ankney nor any witnesses on his behalf.

■ The law in this State relevant to the sufficiency of circumstantial evidence was stated by this court in State v. Emmil, 172 N.W.2d 589, 591 (N.D.1969):

" . . . The law does not require that every fact going to make up a case be proved by eyewitnesses or by direct evidence. In criminal as well as in civil cases, issues may, generally speaking, be established by circumstantial evidence. 30 Am.Jur.2d, Evidence Sec. 1091, p. 248.

"This court has held that there is no legal distinction, so far as weight and effect to be given is concerned, between circumstantial evidence and direct evidence. State v. Foster, 14 N.D. 561, 105 N.W. 938 (1905).

"Thus circumstantial evidence alone may justify a conviction, provided it is of such probative force as to enable the trier of facts to say that the defendant is guilty beyond a reasonable doubt."

In 30 Am.Jur.2d, Evidence § 1125, page 292, it is stated:

"It is a well-established general principle that the guilt of one accused of a crime may be proved by circumstantial evidence. In criminal prosecutions a resort to circumstantial evidence is, in the very nature of things, a necessity. Crimes are usually committed in secret and under conditions where concealment is highly probable, and to require direct testimony would, in many cases, result in freeing criminals and would deny proper protection to society."

Section 12–35–02 of the North Dakota Century Code provides:

"Definition of burglary—Punishment. —Any person who:

.    .    .    .    .    .

"9.  Breaks into and enters at any time any building or any part of a building . . . with intent to steal or to commit a felony,
is guilty of burglary . . . ."

■ Considering the facts of this case in the light of the authorities cited above, we find Ankney's contention that there was insufficient evidence to convict him wholly without merit. If Ankney's argument prevailed, then it could lead to the result that a burglar would have to be caught in the act of moving or attempting to break open a safe in a building before there would be sufficient evidence to justify his conviction. It is recognized that

fingerprint evidence or evidence that Ankney was wearing gloves would have strengthened the State's case, but in this day and age all but neophyte criminals are aware of the consequences of leaving fingerprints. In Clifton v. State, 26 Fla. 523, 7 So. 863 (1890), a case closely analogous to that at bar, the Florida Supreme Court in upholding the sufficiency of the evidence in a burglary case made the following observation:

> "On the night the store was broken into the owner went to the store some time after night, and saw some one light a match inside, and discovered that a window, which he had closed about night, had been broken open, whereupon he hallooed, and the defendant and another man jumped out of the window, and ran off; and upon entering the store two or more sacks with goods of different kinds belonging to Revels were found in them, which in our judgment clearly evidenced the intention of the parties who entered the store to steal the goods found therein, and that the jury were safe in coming to the conclusion that it was the intention to steal goods to the value of more than $20."

■ In State v. Carroll, 123 N.W.2d 659 (N.D.1963), this court considered the sufficiency of the evidence in an arson case and quoted, at page 668, from State v. Moore, 101 N.W.2d 579 (N.D.1960), in which this court cited People v. Newland, 15 Cal.2d 678, 104 P.2d 778, at 780, which quoted the case of People v. Martinez, 20 Cal.App. 343, 128 P. 952, as follows:

> " ' " 'Where the circumstances are such as to reasonably justify an inference of guilt, as found by the jury, the fact that an inference of innocence might likewise be reasonably drawn therefrom does not present a question of law for review by an appellate court any more than does a verdict based upon direct conflicting evidence. In neither case will the verdict be disturbed.' " ' "

In view of the above discussion, we conclude that the evidence presented in the case at bar was sufficient to preclude this court from disturbing the verdict of the jury. We will next consider the various constitutional and procedural arguments which Ankney has put forth.

■ Ankney contends that his case was prejudiced in the eyes of the jury because he did not take the stand and testify in his own behalf. Section 29–21–11, N.D.C.C., provides that an accused's failure to take the stand shall not create any presumption of guilt against him and that the prosecuting attorney shall not be allowed to comment on the accused's failure to testify. The record reveals that the prosecuting attorney in the case at bar did not comment on this matter and that the trial judge properly instructed the jury relevant to § 29–21–11. Ankney offers no evidence that the jury drew any presumption because of Ankney's failure to testify, and in order to sustain his contention this court would be required to establish the rule that any accused who fails to testify is automatically immune to conviction. We are not willing to do so.

■ Ankney also contends that his constitutional rights were violated and he cites Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Relevant to this contention, the record reveals that during the time Ankney was handcuffed and caused to lie prone on the ground he was given two of the four warnings on Officer Mitchell's *Miranda* card. There is no evidence that Ankney was interrogated at that time by Officer Mitchell. The record does reveal, however, that Mr. Beyers elicited a statement from Ankney; not heard by Office Mitchell, to the effect that Ankney had gained entrance to the Elks building through the front door. This testimony was elicited during the cross-examination of Beyers by defense

counsel. The only other statement by Ankney was made to Officer Mitchell at the police station after Ankney was advised of his constitutional rights pursuant to *Miranda.* This statement by Ankney concerned the ownership and location of his automobile. Such statement did not constitute incriminating evidence against Ankney because a subsequent search of the vehicle failed to reveal any burglary tools, and the location and the ownership of the vehicle was not linked by any evidence to show the vehicle's connection with the burglary; thus, only the statement given to Beyers will be examined in the light of *Miranda* and *Massiah.*

Our reading of *Massiah* reveals the holding to be that an accused's incriminating statements obtained by indirect and surreptitious means cannot be used by the prosecution as evidence against him at his trial. Since the prosecution did not attempt to introduce any evidence relevant to the statement made to Beyers by Ankney, we find *Massiah* inapplicable to the case at bar.

In *Miranda, supra,* 384 U.S. at 444, 86 S.Ct. at 1612, the United States Supreme Court stated:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the *prosecution* may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by *law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom . . . " [Emphasis added.]

In our perusal of the record we find no practices of the police or the prosecuting attorney which violate the language or the intent of *Miranda.* The prosecution did not introduce the statement given to Bey-ers by Ankney, and there is no evidence that the statement was made to Beyers as a result of third-degree tactics employed by anyone. Neither did any action taken by the police or the prosecuting attorney violate the "fruit of the poisonous tree" doctrine as advanced by the United State Supreme Court in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920) [see Hall, et al., Modern Criminal Procedure (3d Ed. 1969), at page 640 et seq.] since the statement to Beyers was not used to discover other incriminating evidence. Indeed the statement was not such as would lend itself to producing incriminating evidence.

■ Ankney contends that he was not informed of the charges against him at the time of his arrest, as required by § 29–06–17, N.D.C.C., and that he was not taken before a magistrate without undue delay. As authority, Ankney cites McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Section 29–06–17, N.D.C.C., by its very language refutes Ankney's contention since he was arrested while leaving the scene of the crime. We have considered *McNabb* and *Mallory* and find them neither germane nor helpful to Ankney's contention, since they were cases in which the delay in taking the accused before a magistrate was used to facilitate intense interrogation and the elicitation of confessions.

■ The record reveals that Ankney was arrested late on a Sunday night and that he appeared before a magistrate on the following day. In the recent case of State v. Barlow, 193 N.W.2d 455 (N.D.1971), this court cited with approval the case of Wakaksan v. United States, 367 F.2d 639 (8th Cir. 1966) cert. den. 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341, which defined an unreasonable delay as a delay which furnishes an opportunity for interrogation and the elicitation of damaging statements. In view of this authority, we find that Ank-

ney was taken before a magistrate without undue delay.

■ Ankney asserts that he was prejudiced because of a certain television program broadcast by a Grand Forks television station during the time that he was awaiting sentence. He contends that this program caused undue influence to be exerted upon the trial judge and caused the judge to sentence Ankney to the 4-to-6-year term in prison, rather than the 2-to-4-year term which he would have received had he pleaded guilty. The television program complained of involved comments made by the Grand Forks Police Chief concerning the fact that Ankney was out on bail awaiting sentencing and was unable to appear for sentencing because he had been apprehended in Minnesota by Minnesota authorities and charged with other crimes. The Grand Forks Police Chief indicated on the television broadcast that it is difficult to maintain the morale of his police force when courts are too lenient with criminals.

This court is aware of cases where convictions have been overturned because of excessive publicity before and during a trial. See Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543, reh. den. 382 U.S. 875, 86 S.Ct. 18, 15 L.Ed.2d 118 (1965); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); and Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). However, this court is not aware of, nor has Ankney pointed out, any cases where a sentence has been reduced or a case remanded because of undue influence exerted upon a trial judge between the time of conviction and sentencing. Lacking such authority, this court is extremely reluctant to question the integrity and sincerity of the trial judge. Our search of the authorities reveals that trial judges have a wide discretion in determining the length of sentences imposed, especially where, as in this case, the sentence im-

posed was well within the statutory limits (1-to-10 years, § 12–35–02, N.D.C.C.).

Ankney's contention that he would have received a lesser sentence had he pleaded guilty is not persuasive. It is well recognized that plea bargaining is an effective tool of the criminal justice system and that such plea bargaining often results in lesser penalties for an accused who pleads guilty rather than requiring the prosecution and the courts to try his case. In Brady v. United States, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747, 752 (1970), the United States Supreme Court, after discussing the mutual advantages of the plea bargaining process, states:

> "It is this mutuality of advantage that perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury."

We adhere to the doctrine enunciated in the *Brady* case.

■ Ankney contends that the trial judge's instruction on "reasonable doubt" was erroneous and that it was error not to instruct on the lesser-included offense of unlawful entry. An examination of the record fails to reveal that the judge delivered to the litigants copies of his written instructions; therefore, under § 29–21–33, N.D.C.C., it is presumed in the face of a silent record that no opportunity was afforded to the attorneys to object to the instructions submitted to them. Therefore, the exceptions to the written instructions are preserved.

We shall now consider the merits of Ankney's exceptions. While Ankney strenuously urges that the court's instruction on "reasonable doubt" is error, we are not persuaded by Ankney's argument, because a comparison of the instruction given in the case at bar on "reasonable doubt" reveals

it to be the equivalent of the instructions on reasonable doubt approved by this court in previous decisions. See State v. Liberman, 59 N.D. 252, 229 N.W. 363 (1930), and State v. Montgomery, 9 N.D. 405, 83 N.W. 873 (1900).

In considering Ankney's contention that the jury should have been instructed on the lesser-included offense of unlawful entry, we find the law on the subject to be that it is not error to fail to instruct on the lesser offense when there is no evidence which would tend to reduce the offense. This rule is in conformity with our previous decision in State v. Tucker, 58 N.D. 82, 224 N.W. 878 (1929). In the case at bar, the evidence strongly supports the finding that Ankney was guilty of burglary and there was no evidence to indicate that the lesser offense was involved. Therefore, we find that the failure to instruct on unlawful entry did not prejudice Ankney.

Ankney has also appealed from the order denying his motions for a new trial and for a judgment notwithstanding the verdict. In passing on a motion for a new trial, the trial court has a wide discretion and its determination will not be disturbed without a showing of abuse of this discretion. See State v. Anderson, 172 N. W.2d 597 (N.D.1969), and State v. Carroll, 123 N.W.2d 659 (N.D.1963). Since the grounds that Ankney urged in his motion have been considered by this court in Ankney's appeal from the judgment of conviction and found to be without merit, we find that the trial court did not abuse its discretion in denying his motion. North Dakota law does not afford to the appellant a motion for judgment notwithstanding the verdict in a criminal case. A motion in arrest of judgment (Ch. 29–25, N.D.C.C.) is not available as a remedy to the appellant in this case because the time for making such motion has long since expired. § 29–25–01, N.D.C.C. State v. Gill, 154 N. W.2d 791 (N.D.1967).

The judgment and the order denying the motions for a new trial and judgment notwithstanding the verdict are affirmed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN, and KNUDSON, JJ., concur.