STATE of North Dakota, Plaintiff and Appellee,

v.

Sean CLINKSCALES, Defendant and Appellant.

Crim. No. 950002.

Supreme Court of North Dakota.

Aug. 29, 1995.

Douglas Mattson, State's Atty., Minot, for plaintiff and appellee.

Richard B. Thomas of Thomas Law Firm, Minot, for defendant and appellant.

LEVINE, Justice.

Sean Christopher Clinkscales appeals from a conviction of Class B felony robbery for which he was sentenced to the North Dakota State Penitentiary for a period of ten years, the first four to be served without parole, under NDCC § 12.1–32–02.1, the mandatory minimum sentencing statute for armed offenders. We hold the trial court did not err in refusing to give a lesser included offense jury instruction or in refusing to allow disclo-

sure of the mandatory minimum sentence in closing argument. We affirm.

In the early morning hours of August 22, 1994, Clinkscales, wearing dark clothing and a ski mask, and armed with a BB gun resembling a 9mm semiautomatic pistol, robbed the Minot Superpumper convenience store located on North Broadway. Clinkscales entered the Superpumper convenience store around 5:00 a.m. and stooped in front of the counter until he was approached by the on-duty clerk, Ray Blount, who saw Clinkscales' reflection in the store window. When Blount approached, Clinkscales abruptly stood up, holding what appeared to be a 9mm pistol, and ordered Blount to turn around. Clinkscales went behind the counter, where Blount was standing, and told Blount to open the cash register and put the money in a bag. Throughout the encounter, Clinkscales kept the gun pressed against Blount's back. After Blount placed the cash in a bag, Clinkscales instructed him to open the safe and put the money from the safe into a second bag. Clinkscales continued to press the gun into Blount's back while he filled the second bag with cash and food stamps. Clinkscales instructed Blount to put the second bag inside the first bag and hand it to him. Then, Clinkscales told Blount to put his hands up and walk outside. Clinkscales followed Blount, still pressing the gun against his back. The two men walked about five to six feet from the store entrance and then, Clinkscales instructed Blount to turn around and go back into the store. Clinkscales fled on foot around the corner of the store. Once inside the store, Blount dialed 911 to report the robbery.

Clinkscales was convicted of Class B felony robbery and fleeing, or attempting to elude a police officer. He appeals only the robbery conviction, arguing the trial court erred by refusing to instruct the jury on Class C felony robbery, a lesser included offense of Class B felony robbery, and by prohibiting Clinkscales' counsel from arguing to the jury the mandatory minimum sentence Clinkscales would receive if the jury found that Clinkscales used a dangerous weapon in committing the robbery.

Clinkscales was charged with Class B felony robbery, which had three essential elements the State was required to prove:

"1) That on or about the 22nd day of August, 1994, in Minot, Ward County, North Dakota, the Defendant, Sean Christopher Clinkscales, was engaged in committing a theft;

2) That in the course of committing the theft the Defendant willfully possessed a firearm, or other dangerous weapon; and

3) That while doing so the Defendant willfully threatened or menaced another with serious bodily injury."

There is no constitutional right to a jury instruction on a lesser included offense in every case. *State v. Piper*, 261 N.W.2d 650, 653 (N.D.1977); *see Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). In order to warrant a lesser included offense instruction, a defendant must meet the two-part test discussed in *Piper*, 261 N.W.2d at 654. The defendant must first establish that the requested instruction sets out an offense which is a lesser included offense of the charged offense, and second, that there is evidence which creates a reasonable doubt as to the greater offense and supports a conviction of the lesser included offense beyond a reasonable doubt. *Id.; State v. Sheldon*, 301 N.W.2d 604, 609 (N.D.1980); *see also State v. Tweed*, 491 N.W.2d 412, 414 (N.D.1992).

Section 12.1–01–04(15), NDCC, defines an "included offense" as an offense

"a. Which is established by proof of the same or less than all the facts required to establish commission of the offense charged;

b. Which consists of criminal facilitation of or an attempt or solicitation to commit the offense charged; or

c. Which differed from the offense charged only in that it constitutes a less serious harm or risk of harm to the same person, property, or public interest, or because a lesser degree of culpability suffices to establish its commission."

The State does not dispute that Class C felony robbery is a lesser included offense of Class B felony robbery. The elements of Class C felony robbery are (1) while committing a theft, (2) the defendant willfully attempts to inflict bodily injury upon another or threatens or menaces another with imminent bodily injury. NDCC § 12.1–22–01(1). The elements of Class B felony robbery, with which Clinkscales was charged, are (1) while committing a theft, (2) the defendant willfully possesses a firearm, or other dangerous weapon,[1] and (3) the defendant willfully threatens or menaces another with serious bodily harm.[2] NDCC § 12.1–22–01(2).

Under either subsection (a) or (c) of NDCC § 12.1–01–04(15), the Class C felony robbery appears to fit squarely within the definition of an included offense. The elements of Class C felony robbery are essentially a subset of the elements of Class B felony robbery. *Piper,* 261 N.W.2d at 654. In order to prove Class B felony robbery, the jury must find the existence of Class C felony robbery, *i.e.,* a theft and an attempt or threat of imminent bodily injury, as well as the existence of an additional factual element, the willful possession of a dangerous weapon. *See* NDCC § 12.1–01–04(15)(a); *Sheldon,* 301 N.W.2d at 611.

Although Class C felony robbery is a lesser included offense of Class B felony robbery, Clinkscales still has to point to evidence creating a reasonable doubt as to the greater offense and supporting a conviction of the lesser offense. *Tweed,* 491 N.W.2d at 414. The purpose behind this second re-

quirement for a lesser included offense instruction, is to avoid a jury conviction on the lesser offense based on sympathy for the defendant or an attempt to reach a compromise even though the evidence does not support such a conviction. *Piper,* 261 N.W.2d at 654. Jury instructions should be limited to those crimes a reasonable view of the evidence will sustain. *Id.*

The disparate element between Class B and Class C felony robbery is the possession of a dangerous weapon.[3] In order for Clinkscales to prevail, the evidence must create a reasonable doubt that he willfully possessed a dangerous weapon when he robbed the Minot Superpumper. The jury was instructed on the definition of "dangerous weapon":

"2) 'Dangerous weapon' means but is not limited to, any weapon which will expel, or is readily capable of expelling a projectile by the action of a spring, compressed air, or compressed gas, including any weapon, loaded or unloaded, commonly referred to as a BB gun, or CO2 gun; or, a weapon, the possession of which under the circumstances indicates an intent or readiness to inflict serious bodily injury."

Clinkscales admits he possessed a BB gun resembling a 9mm pistol; however, he argues that the State did not prove the BB gun was "readily capable of expelling a projectile." To support his contention, he points to the trial testimony of the investigating police officers that they did not test the BB gun to see if it was capable of firing.

1. A person who pretends to possess a firearm or dangerous weapon during a robbery may satisfy the elements of Class B felony robbery under NDCC § 12.1–22–01(2), but we do not consider the pretext element here because Clinkscales was charged with the actual possession of a dangerous weapon.

2. Admittedly, the element of Class B felony robbery that defendant willfully threatens or menaces another with serious bodily harm differs from the element of Class C felony robbery that the defendant willfully attempts to inflict bodily injury upon another or threatens or menaces another with imminent bodily injury. However, NDCC § 12.1–22–01(2), for Class B felony robbery, requires the presence of either a threat of serious bodily harm or the possession of a firearm or dangerous weapon, in addition to the

elements of the Class C felony robbery. We are satisfied that under the statute, the only element which differs in this case between the Class B and Class C felony robberies is the possession of a dangerous weapon. *See State v. Meier,* 447 N.W.2d 506, 510 (N.D.1989) [recognizing that there is a dubious distinction between "creat[ing] a substantial risk of serious bodily injury" and "threaten[ing] or menac[ing] another with imminent bodily injury"].

3. One of the elements of Class B felony robbery is possession of either a firearm or a dangerous weapon. The definition of firearm, however, appears to exclude a BB gun, like the one Clinkscales possessed. NDCC § 12.1–01–04(6). Thus, we focus solely on the meaning of "dangerous weapon" for purposes of this discussion.

■ Clinkscales' argument is unconvincing. The jury was instructed that a dangerous weapon was either "any weapon which will expel, or is readily capable of expelling a projectile by the action of a spring, compressed air, or compressed gas" or "a weapon, the possession of which under the circumstances indicates an intent or readiness to inflict serious bodily injury." To support its contention that Clinkscales possessed a dangerous weapon, the State introduced testimony showing the BB gun closely resembled a 9mm semiautomatic pistol, and that Blount, the Superpumper employee robbed by Clinkscales, believed Clinkscales had a 9mm pistol. Blount testified that he feared for his life when Clinkscales had the gun pressed into his back. Blount did not know the gun was unloaded, or whether it was capable of expulsion; however, he obviously believed that it was. *See State v. Meier,* 447 N.W.2d 506 (N.D.1989). A person who uses an unloaded or toy weapon during a robbery is subject to an aggravated penalty because of the "heightened fear" the presence of a weapon creates in the victim. II Working Papers of the Nat'l Comm'n on Reform of Federal Criminal Laws 908 (1970). While the State did not establish directly that the BB gun was capable of firing, Clinkscales introduced no evidence or testimony showing the gun could not fire. *See State v. Schweitzer,* 510 N.W.2d 612, 614 (N.D.1994). Nor did he produce any evidence or testimony disputing the State's contention that he used the BB gun, whether capable of expulsion or not, in a manner which "under the circumstances," indicated "an intent or readiness to inflict serious bodily injury." We are satisfied a reasonable view of the evidence does not create a reasonable doubt that Clinkscales possessed a dangerous weapon. *See Piper,* 261 N.W.2d at 654.

The jury in this case not only completed a general verdict form indicating it found Clinkscales guilty of the Class B felony robbery, but it also completed a special verdict form which specifically asked, "did the Defendant in the course of committing the offense inflict or attempt to inflict bodily injury upon another or threaten or menace another with serious bodily injury with a dangerous weapon or a firearm?" The jury answered "yes." This special verdict form may have invited an inconsistent verdict, had the jury answered "no." But, the jury responded in the affirmative, and in so doing, left no doubt that it made a specific factual finding that Clinkscales willfully possessed a dangerous weapon when committing the robbery. We conclude the trial court did not err in rejecting the requested jury instruction.

■ Clinkscales next argues that he should have been permitted to argue in closing argument that the consequence of a jury finding that the unloaded BB gun was a dangerous weapon was a mandatory minimum prison sentence of four years under NDCC § 12.1–32–02.1. He argues that because the jury makes the factual determination of whether a dangerous weapon was used, it is the jury, in effect, that fixes the penalty for the crime. Therefore, he asserts, "the jury should be allowed to hear arguments regarding sentencing consequences." To prohibit the jury from hearing these sentencing arguments places too much discretion in the prosecutor because the prosecutor decides what crime to charge and prosecute, claims Clinkscales.

Although Clinkscales raises an interesting philosophically laden policy question on the propriety of mandatory minimum sentencing laws, his argument is better put to the policy-making legislature. He cites no legal authority in support of his position that the jury should hear arguments about the effect of mandatory minimum sentences. In effect, Clinkscales would like the minimum mandatory penalty for armed offenders to drive the jury's factfinding process on whether those offenders are armed with dangerous weapons.

■ When the jury plays a role in setting the penalty, as in capital cases, *see, e.g., Mabe v. Commonwealth,* 884 S.W.2d 668 (Ky. 1994); *Hansen v. State,* 592 So.2d 114 (Miss. 1991), it is appropriate for the jury to hear arguments on sentencing and mitigation. But, here the jury's role was that of factfinder. *See* NDCC § 29–21–04. Whether or not the BB gun was a dangerous weapon, within the meaning of our law, was a question of fact for the jury's determination.

*Schweitzer,* 510 N.W.2d at 614. Once the jury made that factual finding, and the others required to reach a verdict, the question of sentencing, a legal question, was for the court to decide. NDCC § 29–21–03 [court decides questions of law]; *Sheldon,* 301 N.W.2d at 615.

We have acknowledged that the legislature may, as a valid exercise of its police power, define what acts constitute criminal offenses, and set maximum and minimum sentencing guidelines for violations of our criminal statutes. *State v. Brandon,* 413 N.W.2d 340, 341 (N.D.1987). By enacting NDCC § 12.1–32–02.1, "[t]he legislature has removed all discretionary power from the trial court as to the minimum sentence to be imposed" upon an individual whose crime falls within the purview of the statute. *Id.* It did not, however, place that discretion into the hands of the jury to decide whether the sentence should be imposed. Section 12.1–32–02.1, NDCC, does not change the role of the jury from that of factfinder. The role of the jury remains to determine what crimes, if any, the defendant committed, and leaves the imposition of punishment to the discretion of the trial court, within the statutorily prescribed limits for the particular offense. *State v. Brandon,* 413 N.W.2d at 341. *Accord Schweitzer v. State,* 552 N.E.2d 454, 457 (Ind.1990); *State v. Short,* 131 N.J. 47, 618 A.2d 316, 323 (1993); *State v. Pereira,* 202 N.J.Super. 434, 495 A.2d 431, 434 (A.D.1985); *see State v. Delisle,* 648 A.2d 632, 638 (Vt. 1994). *Compare* NDCC § 12.1–04.1–17. We conclude the trial court did not err in denying Clinkscales' attorney permission to argue the effect of the minimum mandatory sentence during closing argument.

Accordingly, we affirm.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.