STATE of North Dakota, Plaintiff and Appellee,

v.

Bradley LARSON, Defendant and Appellant.

No. 960003.

Supreme Court of North Dakota.

Oct. 1, 1996.

John E. Greenwood (argued), State's Attorney, Jamestown, for plaintiff and appellee.

Larson Law Firm, Jamestown, for defendant and appellant; argued by Loren C. McCray.

MESCHKE, Justice.

Brad Larson appeals from a jury conviction for assault of a peace officer. We hold the evidence in this case did not require a jury instruction on simple assault as a lesser-included offense, and we affirm.

During the evening of April 8, 1995, Lanita Morehouse, Larson's girlfriend, argued with Tyrone Larson, Larson's son. Morehouse said she was going to leave with her kids. Tyrone told her she could not take the kids, and he would not let her use the telephone. Without her children, Morehouse left the Larson home to call 911.

Morehouse called 911 at 11:59 p.m., told dispatcher Jim Smith about her problem, and returned to the Larson home. Smith sent Deputies Bradley Kapp and Marshall Kelly to the Larson home at 12:04 a.m. They arrived at 12:21, and Morehouse let them in.

Tyrone immediately told the deputies to leave and began to argue with them. The deputies explained they were responding to Morehouse's call for help, but Tyrone would not listen. Tyrone said that he was going to call Larson. While Tyrone was trying to phone Larson, Kapp yelled to Morehouse, who was in another room, that if she was going to go, she should go now. Tyrone hung up the phone, and Larson soon arrived.

Larson also told the deputies to leave. Again, the deputies explained why they were

there, but Larson would not listen, either. Larson pushed Kapp into Kelly, and Kapp pushed back. Larson then charged Kapp, and Kelly sprayed Larson with a form of pepper spray. Larson then assaulted Kelly, pulling out his hair and hitting the side of his head. Kapp pulled Larson off Kelly, and Kapp and Larson began to struggle. Tyrone joined in the fray. Eventually, Kapp disabled Larson and Tyrone with his spray. While Kapp used the spray, Kelly went outside at 12:28 to call for back-up. He promptly went back in, and both deputies subdued Larson and Tyrone. At 12:35, Kelly called off his request for assistance. Larson was charged with assaulting a peace officer.

At Larson's trial, there was conflicting testimony about whether Morehouse and the kids were inside or outside during the struggle. With that evidentiary conflict, Larson's attorney requested a jury instruction to allow consideration of the lesser-included offense of simple assault. Simple assault is a class B misdemeanor; assault of a peace officer is a class C felony. NDCC 12.1–17–01. The trial court refused to give the instruction. Larson was convicted of the felony, and he appealed.

Larson argues the trial court should have instructed the jury on the lesser-included offense of simple assault. He urges that a reasonable view of the evidence supported a conviction of simple assault and created a reasonable doubt about the greater offense of assault of a peace officer. We disagree.

 A defendant is entitled to a jury instruction on a legal position if there is some evidence to support it. *State v. Thiel*, 411 N.W.2d 66, 67 (N.D.1987). But there is no constitutional right to a jury instruction on a lesser-included offense in every case. *State v. Clinkscales*, 536 N.W.2d 661, 663 (N.D. 1995); *State v. Piper*, 261 N.W.2d 650, 653 (N.D.1977). To have an instruction on a lesser-included offense, an accused must meet a two-part test. The accused must show, first, that the requested instruction sets out an offense that is a lesser-included offense of the charged offense, and second, that there is evidence to create a reasonable doubt about the greater offense and to support a conviction of the lesser offense beyond a reasonable doubt. *Clinkscales*, 536 N.W.2d

at 663; *Piper*, 261 N.W.2d at 654. Both sides agree that Larson met the first part of this test.

Proof of less than all the facts to establish commission of a greater offense charged can prove an "included offense." NDCC 12.1–01–04(15). For the offense of assault of a peace officer, the prosecution must prove that (1) a defendant wilfully caused bodily injury (2) to a peace officer, (3) acting in his official capacity, and (4) when the accused knew the victim was a peace officer acting in his official capacity. NDCC 12.1–17–01. For simple assault, the prosecution must prove only that a defendant wilfully causes bodily injury. *Id.* Larson points to testimony that Morehouse and the kids may have already been out of the house by the moment the assault occurred, and argues this casts doubt on whether the deputies were then acting in their official capacities. This evidence, Larson contends, raised a reasonable doubt about the greater offense of assault of a peace officer if the deputies were not acting in their official capacities when the assault occurred.

The separate offense for assault of an "on duty" peace officer was first enacted in 1973 to protect officers while carrying out official functions. 1973 N.D. Laws ch. 116, § 17; NDCC 12.1–17–01. Two years later, an amendment replaced the phrase "on duty" with "acting in an official capacity." 1975 N.D. Laws ch. 116, § 15. The amendment was recommended by an interim study committee:

> Assault on a peace officer under the new Criminal Code is a Class C felony when the peace officer is "on duty" and the aggressor knows that to be a fact. The Peace Officers Association desired that the words "on duty" be deleted and that the words "acting in an official capacity" be substituted therefor. They noted that a law enforcement officer is theoretically able to act in an official capacity even though he is not strictly "on duty". When he is acting in an official capacity he should have the additional protection provided by the present assault section. The Committee accepted this recommendation and is

proposing an appropriate amendment to Section 12.1–17–01. Report of the North Dakota Legislative Council, p. 125 (1975). This insertion of "official capacity" increased the protection for police officers.

 Classifying an assault on a peace officer as a more serious offense is designed to protect both the officers and law enforcement functions. *United States v. Feola*, 420 U.S. 671, 679, 95 S.Ct. 1255, 1261, 43 L.Ed.2d 541 (1975); *State v. Feyereisen*, 343 N.W.2d 384, 387 (S.D.1984); *Celmer v. Quarberg*, 56 Wis.2d 581, 203 N.W.2d 45, 50 (1973). A person is not justified in using force to resist an officer acting under color of law, unless that officer uses excessive force. NDCC 12.1–05–03(1). If we were to interpret the official capacity of an officer in the way Larson proposes, an officer's protection would be diminished by quibbles about how the officer carried out his functions. The assault statute does not make any fine distinctions about what official capacities are.

An officer is presumed to have performed his duty correctly. *Schell v. Collis*, 83 N.W.2d 422, 426 (N.D.1957). That presumption prevails unless overcome by definite evidence to the contrary. *Id.*; *see also Loran v. Iszler*, 373 N.W.2d 870, 874 (N.D. 1985) (a public official is not acting in his official capacity if he goes entirely beyond the scope of his authority and does something not permitted at all by his authority).

From unclear testimony that Morehouse and the kids may have been outside of the home by the moment the assault began, Larson argues the jury could have found the deputies had no further reason to be there and thus were not acting in their official capacities. We are not persuaded this evidence is sufficient to overcome the presumption that the deputies acted correctly. The deputies were there, in uniform, to help a resident upon her request. They did not lose their official capacities as soon as Morehouse and the children left the house. The deputies could have reasonably remained to ensure that Morehouse got far enough away to prevent the Larsons from following her. At least, they needed to be sure those who needed help were gone, but their task was made more difficult by Larson's confrontational conduct. Even if the officers remained for a short time after Morehouse and the kids were out, it would take much more than these circumstances to permit a finding that the deputies acted outside their official capacities.

We decline to permit second-guessing the actions of these officers by the accused or by the jury. Because there was no evidence to create a reasonable doubt about the official capacities of Deputies Kapp and Kelly, the trial court did not err in refusing to instruct on the lesser-included offense. We affirm Larson's conviction.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.