**STATE of North Dakota, Plaintiff and Appellee,**

**v.**

**Kenneth Adam SCHWEITZER, Jr., Defendant and Appellant.**

**Cr. No. 930167.**

Supreme Court of North Dakota.

Jan. 5, 1994.

■■■■■■■■■■

Constance L. Cleveland, Asst. State's Atty., Fargo, for plaintiff and appellee.

Leslie D. Johnson, Fargo, for defendant and appellant.

VANDE WALLE, Chief Justice.

Kenneth Adam Schweitzer, Jr., appealed from a criminal judgment and commitment entered pursuant to his plea of guilty to robbery. We reverse and remand to allow Schweitzer to withdraw his guilty plea.

On March 9, 1993, Schweitzer was charged with the January 1993 robbery of a Fargo Subway restaurant. The criminal information alleged that, during the commission of the crime, Schweitzer "threatened" an employee "by his use and possession of a silver in color metal .22 caliber tear gas pistol." The penalty section of the information listed the crime as a class B felony and stated that there was a mandatory minimum sentence of four years imprisonment under § 12.1–32–02.1, N.D.C.C.

Schweitzer entered into a plea agreement with the State. Under the agreement, the State recommended a six-year term of imprisonment at the State Penitentiary, with the final two years suspended and served under supervised probation. The plea agreement did not address parole eligibility and the parties decided to have the applicability of § 12.1–32–02.1 determined by the court.

At the beginning of a combined change-of-plea and sentencing hearing, the trial court informed Schweitzer of the maximum penalty he could receive under the law and other matters required by Rule 11, N.D.R.Crim.P., but did not inform Schweitzer of the mandatory minimum penalty under § 12.1–32–02.1 if he were found to have used a dangerous weapon during commission of the crime. Schweitzer entered a guilty plea and, after hearing a factual basis for the plea from the prosecutor, the trial court accepted the plea.

The trial court then considered whether the mandatory minimum sentencing law applied. The State offered in evidence, without objection, the tear gas gun Schweitzer used in the robbery. The trial court heard arguments of the prosecutor and Schweitzer's attorney on whether the gun constituted a "dangerous weapon." The trial court found that the gun was a "dangerous weapon" within the meaning of the statute, that Schweitzer threatened another with it, and that the mandatory minimum sentence of four years imprisonment without benefit of parole was therefore applicable. The court accepted the parties' plea agreement, but added to it the mandatory minimum sentencing requirement that the four years of actual incarceration be served without benefit of parole.

I

■■■ Schweitzer asserts that the trial court erred in determining that the gun involved in the robbery was a dangerous weapon justifying imposition of a mandatory minimum sentence. We disagree.

Section 12.1–32–02.1, N.D.C.C., provides:

*"12.1–32–02.1. Minimum prison terms for armed offenders.* Notwithstanding any other provisions of this title, minimum terms of imprisonment shall be imposed upon an offender and served without benefit of parole when, in the course of committing an offense, he inflicts or attempts to inflict bodily injury upon another, or threatens or menaces another with imminent bodily injury with a dangerous weapon, an explosive, or a firearm. Such minimum penalties shall apply only when possession of a dangerous weapon, an explosive, or a firearm has been charged and admitted or found to be true in the manner provided by law, and shall be imposed as follows:

"1. If the offense for which the offender is convicted is a class A or class B felony, the court shall impose a minimum sentence of four years' imprisonment.

"2. If the offense for which the offender is convicted is a class C felony, the court shall impose a minimum sentence of two years' imprisonment.

"This section applies even when being armed is an element of the offense for which the offender is convicted."

Under § 12.1–01–04(6), N.D.C.C., a "dangerous weapon" includes:

"any weapon which will expel, or is readily capable of expelling, a projectile by the action of a spring, compressed air, or compressed gas including any such weapon, loaded or unloaded, commonly referred to as a BB gun, air rifle, or $CO_2$ gun; and any projector of a bomb or any object containing or capable of producing and emitting any noxious liquid, gas, or substance."

Whether the defendant was in possession of a dangerous weapon while committing the offense charged is a question for the trier of fact. *State v. Sheldon,* 312 N.W.2d 367 (N.D. 1981).

The State offered in evidence only the gun to establish that it was a dangerous weapon. Additionally, in reciting the factual basis for the guilty plea, the prosecutor informed the court that during the robbery Schweitzer held the gun near the Subway employee's body and the employee was shaking so badly he could not open the cash register. The trial court made detailed findings on the nature of the weapon based on his own observations of it and counsels' arguments:

"[T]he .22 caliber tear gas revolver used by the Defendant in the robbery in this case, and which uses a standard primer fired powder loaded .22 shell with tear gas and a wad in the front of it instead of lead, or which can fire regular .22 blanks, with a barrel partially opened all the way through does qualify as a 'dangerous weapon' capable of inflicting 'bodily injury' as defined in Section 12.1–01–04(4) of the North Dakota Century Code.

"The Court further finds that ... the tear gas revolver ... is a 'dangerous weapon' since it 'is readily capable of expelling ... compressed gas ...' or is 'any object capable of producing and emitting any noxious liquid, gas, or substance.'

"[T]he weapon is capable of causing 'bodily injury' by the weapon's partially opened barrel, which obviously not only allows the tear gas to escape forward by carrying it through the partially opened barrel and

out the front via the carrier of exploded gun powder fired by an exploding primer cap contained in the shell casing, but ... such gas and/or exploding powder exiting the barrel can cause an injury, be it a burn or loss of an eye, or some similar injury, which is considered a 'bodily injury' defined in the pertinent statute as meaning 'any impairment of physical condition, including physical pain.' Section 12.1–01–04(4)."

Schweitzer asserts that the trial court erred in finding that the tear gas gun was a dangerous weapon without the aid of any "qualified testimony" as to its dangerousness which he contends is required by § 29–26–18, N.D.C.C. We reject this argument.

■ Schweitzer did not object to the State's introduction of the gun in evidence. Nor did Schweitzer argue to the trial court that it could not make a determination as to the gun's dangerousness without the aid of "qualified testimony." As a result, these grounds for attack cannot be raised on appeal. *See, e.g., State v. Wishnatsky,* 491 N.W.2d 733 (N.D.1992).

Schweitzer's argument that tear gas is not capable of producing bodily injury is without merit. We are satisfied, as was the trial court, that tear gas, which is commonly defined as "[a]ny of various agents that on dispersal, usually from grenades or projectiles, irritates the eyes and causes blinding tears," *The American Heritage Dictionary,* at p. 1248 (2d College ed. 1985), can cause "bodily injury" as defined in § 12.1–01–04(4), N.D.C.C.

The weapon, perhaps the best evidence of its dangerousness, appeared to the trial court to be fully capable of firing. If the weapon was incapable of firing or expelling anything, as Schweitzer claims, we believe he had the responsibility of presenting evidence to support his argument. He did not do so.

For purposes of this guilty plea proceeding, we conclude there was substantial evidence to support the trial court's findings that the tear gas gun was a dangerous weapon and that Schweitzer threatened another with it. The trial court correctly concluded

that the mandatory minimum sentencing provisions of § 12.1–32–02.1, N.D.C.C., were applicable in this case.

## II

■ Schweitzer asserts that he should be allowed to withdraw his guilty plea because the trial court, before accepting his plea, failed to personally advise him under Rule 11(b)(2), N.D.R.Crim.P., of the possible application of a mandatory minimum sentence. We agree.

Rule 11(b)(2) provides:

*"(b) Advice to defendant.* The court may not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(c) ] in open court, informing the defendant of and determining that the defendant understands the following:

\*    \*    \*    \*    \*    \*

"(2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered;"

We have often stated that the procedures outlined in Rule 11 are mandatory and binding upon the court. *See, e.g., State v. Parisien,* 469 N.W.2d 563 (N.D.1991).

This case is governed by our decision in *State v. Schumacher,* 452 N.W.2d 345 (N.D. 1990). In *Schumacher,* the trial court did not advise the defendant, prior to accepting his guilty plea, of the mandatory minimum sentence under § 12.1–32–02.1, N.D.C.C., for using a firearm during commission of the offense. The State argued there was substantial compliance with Rule 11 because the record showed that the defendant's attorney requested at the sentencing hearing imposition of the mandatory minimum sentence and

that the attorney discussed the mandatory minimum sentence with the defendant prior to entry of the guilty plea. We held that neither circumstance cured the failure of the trial court to comply with Rule 11:

"The fact that the mandatory minimum sentencing procedure was discussed and argued by counsel at the sentencing hearing, after the plea had been accepted, does not cure the failure to comply with the requirements of Rule 11. The purpose of the procedure outlined in Rule 11(b) is to ensure that the defendant is fully aware of the consequences of a guilty plea before he enters his plea. That purpose is not satisfied by evidence showing that counsel raised the issue during sentencing proceedings, after the plea had been made and accepted.

"Nor is the failure to comply with Rule 11 cured by the testimony of Schumacher's trial counsel that he discussed mandatory minimum sentencing with Schumacher. Although ... we will consider the entire record when reviewing the knowing and voluntary nature of a guilty plea, we will not rely upon testimony regarding matters which occurred outside the courtroom to determine this issue."

*Schumacher,* 452 N.W.2d at 346–347. As in *Schumacher,* the trial court here accepted the guilty plea before the issue of the mandatory minimum sentence was addressed and without first informing him of its possible application.[1]

The State asserts that the trial court's failure to specifically advise Schweitzer of the mandatory minimum sentence is not fatal to acceptance of the plea because Schweitzer had sufficient notice of the mandatory minimum sentence through the criminal information filed with the court and presented to Schweitzer at the time of his arraignment.

---

1. After *Schumacher* was decided, we ruled in *Houle v. State,* 482 N.W.2d 24 (N.D.1992), that parole eligibility is a collateral, rather than a direct, consequence of a guilty plea and that Rule 11 is therefore not violated by a trial court's failure to notify a defendant of parole eligibility before accepting the plea. Although the only practical difference between the sentence recommended in the plea agreement in this case and the sentence imposed by the trial court is that the

four years of imprisonment be served without benefit of parole, we are not here faced with the trial court's mere failure to notify Schweitzer of possible parole ineligibility. The record here, like the record in *Schumacher,* fails to show that the trial court personally advised Schweitzer of the possible application of a mandatory minimum sentence, regardless of its collateral consequence of parole ineligibility.

The trial court, in the criminal judgment and commitment, states:

> "[T]he Defendant has been informed that the penalty is a Class B felony carrying a mandatory minimum of four years imprisonment sentence. He was informed at arraignment and in writing on the criminal Information, as well as at sentencing where all counsel posed the issue to the Court of whether the four-year mandatory minimum sentence without benefit of parole applied in this case."

We have held that substantial compliance with Rule 11 exists if the record of the arraignment, in conjunction with the record of the change-of-plea hearing, clearly reveals that the trial court informed the defendant of the rights he was waiving by pleading guilty. *State v. Hoffarth,* 456 N.W.2d 111 (N.D. 1990). However, in this case the trial judge who accepted the plea and sentenced Schweitzer was not the judge who presided at his arraignment. The record on appeal does not contain a transcript of Schweitzer's arraignment to support the State's assertion, or the trial court's statement, that Schweitzer was advised of the mandatory minimum sentence by the judge at that time. Schweitzer obviously learned of the mandatory minimum sentence when the issue was presented to the trial court at the sentencing hearing, but this occurred after the trial court had already accepted the plea. This does not constitute substantial compliance with Rule 11. *See State v. Boushee,* 459 N.W.2d 552 (N.D.1990).

Although the record contains a guilty plea form provided by the State and signed by Schweitzer and his attorney stating that he had "been informed" and "underst[ood] ... [t]he minimum mandatory punishment, if any," we do not believe that it cures the Rule 11 violation. Schweitzer, by signing the form, did not acknowledge that the judge informed him of the mandatory minimum sentence. It was not mentioned by the trial court or acknowledged by Schweitzer at the change-of-plea hearing. The form is little more than written evidence that Schweitzer discussed mandatory minimum sentencing with his attorney. Under *Schumacher,* 452 N.W.2d at 347, we will not determine compliance with Rule 11 by relying on evidence "regarding matters which occurred outside the courtroom." While requesting a defendant to review and sign a written document setting forth the advice required by Rule 11 may be of assistance to the defendant in understanding the consequences of his plea, it is not a substitute for the Rule's requirement that the judge personally address the defendant in open court about those consequences. *See United States v. Del Prete,* 567 F.2d 928 (9th Cir.1978); *United States v. Adams,* 566 F.2d 962 (5th Cir.1978); *State v. Browning,* 245 Kan. 26, 774 P.2d 935 (1989); *Chamberlain v. State,* 815 S.W.2d 534 (Tenn. Ct.Cr.App.1990).

The trial court's express statement on the record of an applicable mandatory minimum sentence eliminates the inherent danger of misinterpreting whether the defendant's decision to plead guilty was made with full knowledge of the sentence which must be imposed as a result of that plea. *Schumacher.* That advice does not appear on the record before us. When the trial court does not advise the defendant of the mandatory minimum sentence in accordance with Rule 11(b)(2), the interests of justice require that the defendant be allowed to withdraw his plea of guilty. *Schumacher.*

Accordingly, we reverse the criminal judgment and remand to allow Schweitzer to withdraw his guilty plea. Although we find no error in the trial court's determination that the gun used was a dangerous weapon for purposes of this guilty plea proceeding, if on remand Schweitzer pleads not guilty and the case proceeds to trial, he is entitled to have the question of whether or not the gun is a dangerous weapon submitted to the trier of fact.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.