2009 ND 174

**STATE of North Dakota, Plaintiff and Appellee**

v.

**David Lawrence O'TOOLE, Defendant and Appellant.**

**No. 20090034.**

Supreme Court of North Dakota.

Oct. 13, 2009.

Christopher D. Griffin (argued), Assistant State's Attorney, Mark Jason McCarthy (on brief), Assistant State's Attorney, and Christopher S. Pieske (on brief), third-year law student, Grand Forks, ND, for plaintiff and appellee.

Michael J. Geiermann, Bismarck, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] David O'Toole appeals from a criminal judgment entered upon a jury verdict finding him guilty of reckless endangerment. We affirm, concluding that there is sufficient evidence to support O'Toole's conviction and that the district court did not err in refusing to give O'Toole's requested jury instruction.

I

[¶ 2] O'Toole is a police officer with the Grand Forks Police Department and has approximately nine years of law enforcement experience. O'Toole had achieved the rank of master police officer at the time of the incident. He was on duty during the early hours of February 10, 2008. The weather was very cold that night, with an air temperature of sixteen degrees below zero, twenty-one mile per hour winds, and a windchill of approximately forty-two degrees below zero.

[¶ 3] Shortly after midnight on February 10, 2008, Grand Forks Police Officer Brian Cofer stopped a pickup truck for speeding. Jason Hickman was a passenger in the stopped vehicle. After stopping the vehicle Cofer learned there was an

outstanding warrant for the driver of the vehicle. Cofer requested backup, and Officer Eric Straus arrived on the scene. Cofer asked the vehicle's driver to exit the vehicle and placed the driver in the back of his squad car. Cofer requested Straus remove Hickman from the vehicle so it could be searched, and Straus directed Hickman to exit the vehicle. Hickman was wearing jeans and a long-sleeved shirt, but he did not have a coat, hat, or gloves with him. Cofer asked Straus to place Hickman in Straus's squad car, but Straus refused.

[¶ 4] O'Toole arrived on the scene shortly after Hickman was removed from the pickup truck. Although O'Toole was a master police officer and a higher rank than Cofer and Straus, he did not have command authority over the other two officers, and the other two officers did not have command authority over O'Toole. Straus told Hickman to stand in front of O'Toole's squad car while the officers searched the vehicle. O'Toole started to get out of his squad car, but Straus told him to get back in the car. Straus got in his squad car and left Hickman standing outside. Hickman attempted to get O'Toole's attention. O'Toole rolled down his window and Hickman asked O'Toole if he could sit in O'Toole's car. O'Toole refused and closed his window. O'Toole sent Straus an electronic message over the mobile data computer located in his squad car, saying, "[T]hats right make him freeze." Straus responded with a message saying, "[Y]ep ... that boy has earned it over the years here."

[¶ 5] After the officers searched the pickup truck, Hickman was allowed back in the vehicle. The officers later discovered the warrant for the driver was invalid, and the driver and Hickman were allowed to leave. Hickman sought medical atten-

tion later that day, and he was diagnosed with frostbite on his ears.

[¶ 6] O'Toole was charged with reckless endangerment in violation of N.D.C.C. § 12.1–17–03, alleging he created a substantial risk of bodily injury or death to Hickman. A jury trial was held, and O'Toole requested the court instruct the jury that Hickman was not in custody at the time of the stop and that he was free to leave. The court denied his request. At the close of the State's evidence and at the close of all the evidence, O'Toole moved for a directed verdict of acquittal under N.D.R.Crim.P. 29. The court denied O'Toole's motions. The jury found O'Toole guilty of reckless endangerment.

II

[¶ 7] O'Toole argues insufficient evidence exists to support his conviction for reckless endangerment. He contends that a person only is guilty of reckless endangerment if he creates a substantial risk of serious bodily injury or death to another and that there is no evidence he created the risk of serious bodily injury to Hickman.

[¶ 8] O'Toole preserved the issue of sufficiency of the evidence for appellate review by timely moving for a judgment of acquittal under N.D.R.Crim.P. 29. *See State v. McAvoy*, 2009 ND 130, ¶ 8, 767 N.W.2d 874. The standard of review for claims of insufficient evidence is well established:

"[W]e look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its fa-

vor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses."

*State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819 (citations omitted).

[¶ 9] A person is guilty of reckless endangerment if "he creates a substantial risk of serious bodily injury or death to another." N.D.C.C. § 12.1-17-03. There is a risk of serious bodily injury or death for purposes of the reckless endangerment statute "if the potential for harm exists, whether or not [the individual's] safety is actually jeopardized." *Id.* Serious bodily injury is "bodily injury that creates a substantial risk of death or which causes serious permanent disfigurement, unconsciousness, extreme pain, permanent loss or impairment of the function of any bodily member or organ, a bone fracture, or impediment of air flow or blood flow to the brain or lungs." N.D.C.C. § 12.1-01-04(29). An individual must recklessly engage in the conduct to violate N.D.C.C. § 12.1-17-03. *State v. Meier*, 422 N.W.2d 381, 383 (N.D.1988). An individual acts recklessly if "he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct...." N.D.C.C. § 12.1-02-02(1)(c).

[¶ 10] O'Toole does not challenge the jury's findings that he acted recklessly or that a substantial risk of serious bodily injury existed. Rather, he contends he did not create the situation which led to the risk of serious bodily injury. O'Toole argues "create" means to bring about, make, or originate and, therefore, an individual is guilty of reckless endangerment only if he creates the situation which results in a substantial risk of serious bodily injury. O'Toole claims Straus created the risk to Hickman by deciding Hickman should stand outside while the pickup truck was searched.

[¶ 11] The interpretation of a statute is a question of law. *Sauby v. City of Fargo*, 2008 ND 60, ¶ 8, 747 N.W.2d 65. "Words in a statute are given their plain, ordinary, commonly understood meaning, unless defined in the code or unless the drafters clearly intended otherwise." *Id.* (quoting *Simon v. Simon*, 2006 ND 29, ¶ 12, 709 N.W.2d 4); N.D.C.C. § 1-02-02. The criminal code does not specifically define the term "create," and it is not ambiguous; therefore, it should be given its plain, ordinary, and commonly understood meaning. The plain meaning of "create" includes "to produce or bring about by a course of action or behavior." *Webster's Third New Int'l Dictionary* 532 (2002).

[¶ 12] O'Toole did not propose a jury instruction defining "create," and the district court did not give the jury a specific definition for the word. The court instructed the jury it may apply common knowledge to the facts and circumstances of the case in considering the evidence, which includes using common knowledge to decide whether O'Toole created a substantial risk of serious bodily injury to Hickman based on the evidence presented at trial. "We have long recognized not only the permissibility, but the desirability of the jury's employment of common knowledge and reason in reaching a verdict." *State v. Bitz*, 2008 ND 202, ¶ 10, 757 N.W.2d 565. The jury could use any reasonable definition of the word "create" in deciding whether O'Toole was guilty.

[¶ 13] The evidence establishes Straus directed Hickman to exit the vehicle and asked Hickman if he had a coat. Hickman said he did not, and Straus then told Hickman he was going to freeze. The evidence

demonstrates O'Toole initially attempted to exit his squad car, but Straus told him to get back in the car because Hickman was going to stand outside. Hickman testified he attempted to get O'Toole's attention and asked if he could sit in O'Toole's squad car because he was really cold. O'Toole denied Hickman's request and closed his window. After refusing Hickman's request to sit in the squad car, O'Toole sent Straus a message saying, "[T]hats right make him freeze." Hickman testified he became very cold, he was shaking, his extremities were cold, and his eyes started watering. Hickman testified he did not believe he was free to leave, but if he had been, he did not know where he would have gone. Hickman testified his ears hurt and it took him a long time to warm up after the incident. The evidence establishes Hickman had frost bite on his ears.

[¶ 14] Applying a reasonable definition of the word "create," the jury could have found from the evidence that O'Toole created a risk of serious bodily injury to Hickman by refusing to allow Hickman to sit in his squad car. Reviewing the evidence in the light most favorable to the verdict and giving the verdict the benefit of all inferences reasonably drawn from the evidence, the evidence supports the jury's decision.

### III

[¶ 15] O'Toole argues the district court erred in failing to give his requested jury instruction. O'Toole requested the court instruct the jury that "[a]t the time of the traffic stop on February 10, 2008, Jason Hickman was not in police custody nor had he been arrested. At that time, Jason Hickman was free to leave the scene of the traffic stop." O'Toole contends Hickman was free to leave and, therefore, he chose to stand outside and placed himself in a position where he could be injured.

[¶ 16] We review jury instructions as a whole to determine whether they fairly and adequately inform the jury of the applicable law. *State v. Zajac*, 2009 ND 119, ¶ 12, 767 N.W.2d 825. A defense is raised when evidence creates a reasonable doubt about an element of the offense, and a court errs in refusing to instruct the jury on a defense that has been adequately raised. *Id.* A court does not err in refusing to give a jury instruction that is irrelevant or inapplicable. *Id.*

[¶ 17] Whether Hickman was in custody at the time of the stop is irrelevant. The stop occurred after midnight in extreme weather conditions. Hickman testified he did not believe he was free to leave. He also testified he did not know where he would have gone if he had believed he was free to leave. The evidence shows there were no businesses open in the vicinity of the stop at that time of night. There was no evidence that Hickman had any place else he could have gone if he was not in custody and was free to leave. We conclude the district court did not err in failing to give the requested jury instruction.

### IV

[¶ 18] Sufficient evidence exists to support O'Toole's conviction and the district court did not err in refusing to give O'Toole's requested jury instruction. We affirm the district court's judgment.

[¶ 19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.