2013 ND 4

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Alois VETTER, Defendant and Appellant.**

No. 20120015.

Supreme Court of North Dakota.

Jan. 23, 2013.

Cherie LaVonne Clark (argued) and Reid Alan Brady (on brief), Assistant State's Attorneys, Fargo, ND, for plaintiff and appellee.

Daniel Eric Gast, Fargo, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Alois Vetter appeals the district court's judgment entered after a jury convicted him of aggravated assault with a dangerous weapon. Vetter argues a vehicle is not a dangerous weapon under the plain language of N.D.C.C. § 12.1–01–04(6). We affirm, concluding a vehicle may be considered a dangerous weapon under N.D.C.C. § 12.1–01–04(6) and sufficient evidence supports Vetter's conviction.

I

[¶ 2] Vetter owns rental property in West Fargo, North Dakota. Brian Hemphill, the victim, was a prior tenant. Vetter and Hemphill developed a confrontational relationship. On February 18, 2011, Vetter drove his 2005 Hummer past one of his properties to see if a tenant had moved out. Vetter drove past the property at least two more times. Hemphill was present at the property and learned Vetter had repeatedly driven past. Hemphill decided to confront Vetter.

[¶ 3] Hemphill walked into the street in front of Vetter's vehicle. Hemphill testified that Vetter yelled at Hemphill to get out of the way, but that he did not move because he "didn't want to be bullied by [Vetter] anymore." Vetter drove forward while Hemphill backpedaled. Vetter testified the road was too narrow to turn to get around Hemphill. Initially, Hemphill could have moved away but did not. At some point, Hemphill could not get out of the path of the vehicle and could not keep up. Hemphill fell beneath the vehicle. Eyewitnesses testified that both the front tire and rear tire of Vetter's vehicle rolled over Hemphill. Hemphill suffered multiple injuries, including broken ribs, a broken facial bone, a lacerated ear and abrasions. According to West Fargo Police Officer Trent Stanton, Hemphill was pushed back approximately eighty-six feet.

[¶ 4] Vetter was convicted of aggravated assault under N.D.C.C. § 12.1–17–02(1). The jury specially found Vetter "inflicted bodily injury upon another with a dangerous weapon" in the course of committing the crime. Vetter filed a motion for a new trial and acquittal, arguing a motor vehicle cannot be considered a dangerous weapon. The district court denied the motion and sentenced Vetter to three years imprisonment with one year suspended. The two-year sentence was the mandatory minimum due to the special finding Vetter used a dangerous weapon under N.D.C.C. § 12.1–32–02.1.

II

[¶ 5] Vetter argues a vehicle is not a dangerous weapon under N.D.C.C. § 12.1–01–04(6) as a matter of law. He frames this appeal as a matter of statutory construction, which is fully reviewable by this Court. *State v. Trevino*, 2011 ND 232, ¶ 21, 807 N.W.2d 211. The State argues Vetter's argument is simply a challenge to the jury's finding Vetter used a dangerous weapon while committing an aggravated assault. As such, the State frames this appeal as a challenge to the sufficiency of the evidence, under which this Court "merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *State v. Bauer*, 2010 ND 109, ¶ 7, 783 N.W.2d 21 (quotation omitted).

[¶ 6] Prior appeals challenging a jury finding the defendant used a dangerous weapon while committing aggravated assault have been construed as issues of fact and reviewed under the sufficiency of the evidence standard. "Whether the defendant was in possession of a dangerous weapon while committing the offense charged is a question for the trier of fact." *Bauer*, 2010 ND 109, ¶ 7, 783 N.W.2d 21

(quoting *State v. Schweitzer*, 510 N.W.2d 612, 614 (N.D.1994)); *see also State v. Clinkscales*, 536 N.W.2d 661, 664–65 (N.D. 1995) (holding evidence did not create a reasonable doubt about whether the defendant possessed a dangerous weapon). However, none of the defendants in *Bauer*, *Schweitzer* or *Clinkscales* presented challenges identical to Vetter's.

[¶ 7] In *Schweitzer*, the defendant pled guilty to robbery and the trial court found the tear gas gun used in the robbery was a "dangerous weapon" triggering the mandatory minimum sentence. 510 N.W.2d at 613. Schweitzer argued the trial court erred by finding the tear gas gun was a dangerous weapon "without the aid of any 'qualified testimony' as to its dangerousness which [Schweitzer] contends is required by § 29–26–18, N.D.C.C." *Schweitzer*, at 614. Schweitzer was disputing an issue of fact: the judge could not find a tear gas gun dangerous without qualified testimony supporting the finding.

[¶ 8] In *Clinkscales*, the defendant was convicted of felony robbery. 536 N.W.2d at 662. The elements of that offense were that the defendant: (1) while committing a theft, (2) willfully possessed a firearm or other dangerous weapon and (3) willfully threatened or menaced another with serious bodily harm. *Id.* at 664. Clinkscales conceded he possessed a BB gun resembling a 9mm pistol, but argued the State did not prove the BB gun was "readily capable of expelling a projectile." *Id.* He argued the officers who testified at trial did not test the BB gun to determine if it was capable of firing. *Id.* Like Schweitzer, Clinkscales was challenging an issue of fact: whether the BB gun was capable of firing a projectile.

[¶ 9] In *Bauer*, the defendant was convicted of aggravated assault. 2010 ND 109, ¶ 5, 783 N.W.2d 21. The defendant argued that "there was insufficient evi-dence to show that the knife met the definition of a weapon sufficient to constitute aggravated assault." *Id.* at ¶ 6. Vetter's argument is different than Bauer's. Bauer expressly challenged the sufficiency of the evidence, where Vetter characterizes his challenge as a matter of statutory construction. Bauer was convicted of aggravated assault under N.D.C.C. § 12.1–17–02(2), which defines aggravated assault as "[k]nowingly caus[ing] bodily injury or substantial bodily injury to another human being with a dangerous weapon or other weapon, the possession of which under the circumstances indicates an intent or readiness to inflict serious bodily injury." Vetter was convicted under N.D.C.C. § 12.1–17–02(1). The jury in *Bauer* did not make a separate finding that a dangerous weapon was used in the crime. We held, "[T]he jury could have reasonably inferred that Bauer possessed the knife under circumstances that indicated a readiness to inflict serious bodily injury." *Bauer*, at ¶ 9. Thus, the issue in *Bauer* was not whether as a matter of law a knife was a dangerous weapon, but whether Bauer's possession of the knife indicated a readiness to inflict serious bodily injury as required by N.D.C.C. § 12.1–17–02(2).

[¶ 10] Vetter's argument hinges on whether a vehicle is a dangerous weapon as a matter of law, not whether Vetter's use of the vehicle indicated a readiness to inflict serious bodily injury. Though the sufficiency of the evidence standard ultimately must be employed, we first must address the meaning of N.D.C.C. § 12.1–01–04(6) to determine "if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *Bauer*, 2010 ND 109, ¶ 7, 783 N.W.2d 21 (quotation omitted); *see also State v. O'Toole*, 2009 ND 174, ¶¶ 11–14, 773 N.W.2d 201 (interpreting statute as ques-

tion of law prior to applying the sufficiency of the evidence standard).

### A

■ [¶ 11] The standard of review for interpreting a criminal statute is well established:

> "Construction of a criminal statute is a question of law, fully reviewable by this Court. Our primary goal in interpreting statutes is to ascertain the Legislature's intentions. In ascertaining legislative intent, we first look to the statutory language and give the language its plain, ordinary and commonly understood meaning. We interpret statutes to give meaning and effect to every word, phrase, and sentence, and do not adopt a construction which would render part of the statute mere surplusage. When a statute's language is ambiguous because it is susceptible to differing but rational meanings, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain the Legislature's intent. We construe ambiguous criminal statutes against the government and in favor of the defendant."

*State v. Buchholz*, 2005 ND 30, ¶ 6, 692 N.W.2d 105 (quotation omitted). We first examine the plain language of the statute. *Id.* Section 12.1–01–04(6), N.D.C.C., states:

> " 'Dangerous weapon' means, but is not limited to, any switchblade or gravity knife, machete, scimitar, stiletto, sword, or dagger; any billy, blackjack, sap, bludgeon, cudgel, metal knuckles, or sand club; any slungshot; any bow and arrow, crossbow, or spear; any weapon which will expel, or is readily capable of expelling, a projectile by the action of a spring, compressed air, or compressed gas including any such weapon, loaded or unloaded, commonly referred to as a BB gun, air rifle, or CO2 gun; and any

projector of a bomb or any object containing or capable of producing and emitting any noxious liquid, gas, or substance."

A vehicle is not enumerated in the statute, but the statute includes the catch-all phrase "but is not limited to." Vetter argues the primary purpose of each enumerated item is use as a weapon. Vetter argues that instead of using broad categories, the legislature identified particular classes of knives, e.g. switchblade, gravity knife, machete and sword. He claims the legislature defined dangerous weapons by the item's essential characteristics as opposed to the purpose for which the item is used in a particular instance. The State argues the statutory list is not exhaustive and the jury must employ common knowledge and experience in determining if an item is a dangerous weapon. "We have long recognized not only the permissibility, but the desirability of the jury's employment of common knowledge and reason in reaching a verdict." *O'Toole*, 2009 ND 174, ¶ 12, 773 N.W.2d 201 (quotation omitted).

■ [¶ 12] We give meaning and effect to each word of the statute. Vetter argues the enumerated list becomes surplusage if the statute is construed to permit any other item to be considered a dangerous weapon without limitation. To harmonize the enumerated list with the catch-all phrase, Vetter argues the enumerated items have a primary purpose of inflicting damage in some way and the "but not limited to" language expands the class to include any similar items with distinct names sharing the essential characteristic of being a weapon. Vetter relies on the doctrine of *ejusdem generis*. "Under the rule of *ejusdem generis*, when general words follow specific words in a statutory or contractual enumeration, the general words are construed to embrace

only objects similar in nature to those objects specifically enumerated." *State, ex rel. Stenehjem v. Philip Morris, Inc.*, 2007 ND 90, ¶ 19, 732 N.W.2d 720. However, Vetter's *ejusdem generis* argument has no application where the legislature manifests a contrary intention. *Id.* The legislature used the words "but not limited to" in the statute. "Use of the words, 'including, without limitation,' reflects a contrary intention that an enumeration is not exhaustive, rendering the doctrine of *ejusdem generis* inapplicable." *Id.* As with using "including, without limitation," the legislature's use of the phrase "but not limited to" renders the doctrine of *ejusdem generis* inapplicable.

[¶ 13] Other courts confronting this issue have concluded that while a vehicle is not a dangerous weapon per se, it may be so used to constitute a dangerous weapon within the meaning of an assault statute. *See People v. Goolsby*, 284 Mich. 375, 279 N.W. 867, 869 (1938) (holding an automobile may be so used as to constitute a dangerous weapon); *see also Turner v. State*, 281 Ga. 487, 640 S.E.2d 25, 27 (2007) (relying on a distinguishable statute) ("Although an automobile is not per se a deadly or offensive weapon, it may become one depending on the manner and means by which the vehicle is used." (quotation omitted)); *Wyatt v. Commonwealth*, 738 S.W.2d 832, 834 (Ky.Ct.App.1987) (*rev'd on other grounds* ) (relying on a distinguishable statute) ("[A] vehicle may be used in such a manner as to constitute a dangerous instrument.").

[¶ 14] Whether a vehicle is a dangerous weapon is dependent upon the guiding statute. Michigan provides an analogous example, and its statute provides, "[A] person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, *or other dangerous weapon* without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony. . . ." Mich. Comp. Laws. Ann. § 750.82(1) (West 2012) (emphasis added). Like N.D.C.C. § 12.1–01–04(6), the Michigan statute provides a per se list and includes the catch-all "or other dangerous weapon." In *Goolsby*, the Supreme Court of Michigan held a vehicle could be considered a dangerous weapon under the statute. 279 N.W. at 869. There, the defendant was stopped by a police officer. *Id.* at 868. After the stop, the defendant deliberately drove forward, struck the officer with the vehicle and drove over the officer's foot with the left rear tire. *Id.* Like Vetter, Goolsby argued a vehicle is not a dangerous weapon within the meaning of the statute. *Id.* at 869. The court explained:

> "Some weapons carry their dangerous character because so designed and are, when employed, per se, deadly, while other instrumentalities are not dangerous weapons unless turned to such purpose. The test as to the latter is whether the instrumentality was used as a weapon and, when so employed in an assault, dangerous."

*Id.* at 868. Goolsby argued that the statute restricted dangerous weapons to the same type and kind as enumerated in the statute and that a vehicle did not fall within that scope. *Id.* at 869. Like Vetter, Goolsby argued the doctrine of *ejusdem generis* precluded a vehicle from being a dangerous weapon as a matter of law. *Id.* The court held the doctrine did not apply, stating, "The evil, under legislative consideration, was that of assaults, aggravated by use of dangerous weapons and, expressive of such purpose, certain instrumentalities were mentioned, *not to the exclusion of other potentially dangerous weapons,* but inclusion thereof by the omnibus term 'or other weapon.' " *Id.* (emphasis added).

[¶ 15] Vetter's characterization of N.D.C.C. § 12.1–01–04(6) is too narrow. Adopting Vetter's argument requires this Court to conclude as a matter of law a vehicle may *never* be used as a dangerous weapon. *See People v. Buford,* 69 Mich. App. 27, 244 N.W.2d 351, 353 (1976) ("The only question left for us to review then is whether we can say that a boot by its very nature, as a matter of the law, can never be used as a dangerous weapon."). The State's argument is not that a vehicle will always be a dangerous weapon but that it may be used as one. "Whether a weapon is deadly or dangerous is ordinarily a question of fact to be determined by all the attendant circumstances, and especially by the mode of use." Charles E. Torcia, *Wharton's Criminal Law* § 197 at 469 (15th ed.1994). "The dangerous or deadly character of a weapon is determined by the effect likely to be produced by it." *Id.* at 467.

[¶ 16] The State's characterization of N.D.C.C. § 12.1–01–04(6) comports closer to the plain language of the statute as well as our precedent emphasizing the factually grounded analysis of whether an item is a dangerous weapon. The State's characterization permits the fact finder to determine whether an object is a dangerous weapon based on how the object is used. We cannot say a vehicle may never be considered a dangerous weapon under N.D.C.C. § 12.1–01–04(6). Thus, this case returns to the sufficiency of the evidence standard to determine whether the jury had sufficient evidence to find Vetter used a dangerous weapon.

**B**

[¶ 17] Our review of the sufficiency of the evidence for a jury verdict is limited. *Bauer,* 2010 ND 109, ¶ 7, 783 N.W.2d 21. Our standard of review is well established:

"We look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses."

*O'Toole,* 2009 ND 174, ¶ 8, 773 N.W.2d 201 (quotation omitted). Reviewing the evidence in the light most favorable to the verdict, and giving the verdict the benefit of all inferences reasonably drawn from the evidence, the evidence supports the jury's finding. Vetter intentionally drove his vehicle forward while Hemphill backpedaled. Vetter continued forward after Hemphill fell and both the front and rear tire of Vetter's vehicle went over Hemphill. A jury could reasonably find Vetter used his vehicle as a dangerous weapon.

**III**

[¶ 18] A vehicle may be considered a dangerous weapon under N.D.C.C. § 12.1–01–04(6), and sufficient evidence exists to support Vetter's conviction. We affirm the district court's judgment.

[¶ 19] MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 20] I believe it is overly simplistic to conclude that it is always a question of fact

whether or not an object used in committing an aggravated assault is a dangerous weapon. Nevertheless, I concur in the result reached by the majority opinion. The cases cited by the majority for the most part involve objects such as guns and knives which are known to be dangerous when used improperly. Automobiles, too, are known to be dangerous when used improperly. I leave for another case the question of whether, under our statutes, an object not known to have dangerous properties becomes a dangerous weapon when used in an assault.

[¶ 21] GERALD W. VANDE WALLE, C.J.