# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 7

State of North Dakota,                                    Plaintiff and Appellee

v.

Brent Allen Castleman,                                  Defendant and Appellant

## No. 20210011

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Michael P. Hurly, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices VandeWalle, Crothers, and McEvers joined. Justice McEvers filed a concurring opinion, in which Justice VandeWalle joined.

Christopher W. Nelson, Assistant State's Attorney, Minot, N.D., for plaintiff and appellee.

Kyle R. Craig, Minot, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]   Brent Castleman appeals from a criminal judgment after a jury convicted him of child abuse. He argues there was insufficient evidence to establish a mental injury. We reverse.

I

[¶2]   Castleman was charged with four counts of child neglect and six counts of child abuse. After the preliminary hearing, the district court dismissed the child neglect charges for a lack of probable cause. Castleman moved to dismiss the remaining charges, and the court dismissed three of the child abuse counts. Castleman went to trial on the remaining three counts of child abuse, including abuse of a child under the age of six by willfully inflicting mental injury to the child, a class B felony. This count alleged he had caused the child mental injury by assaulting the child's mother in view of the child.

[¶3]   At trial, the mother testified she was in her daughter's bedroom when Castleman entered the room, screamed at her, held her by the neck, and pushed her face into a pillow. Castleman said to his wife, "I'll rip your fucking head off your fucking torso." Their daughter was on the bed with the mother during the incident. The mother testified her daughter was "really scared," "shaking," and "cr[ied] a little bit." The mother recorded audio of the incident using her phone, which was hidden under a pillow. The recording was played for the jury. The recording includes Castleman threatening, arguing with, and yelling at his wife. The daughter can be heard crying for a few seconds during the recording.

[¶4]   At the close of the State's case, Castleman moved for a judgment of acquittal on all counts. The district court granted the motion for one count, allowing the jury to decide the two remaining counts. During deliberations, the jury submitted a question asking for the definition of mental injury. The court's response simply referred the jury back to the instructions already given and

directed them to apply their collective understanding. The jury returned a guilty verdict on count 1, child abuse by mental injury, and a not guilty verdict on count 2, which alleged Castleman had inflicted bodily injury on another child by punching him in the face.

## II

[¶5] The State argues Castleman failed to preserve any issue regarding a definition of mental injury by not objecting to jury instructions or offering a definition to be included in the instructions. Castleman preserved the issue of sufficiency of the evidence for review on appeal by moving for judgment of acquittal under N.D.R.Crim.P. 29. *State v. O'Toole*, 2009 ND 174, ¶ 8, 773 N.W.2d 201. Where a claim of insufficient evidence is preserved for appeal, related issues of statutory interpretation are also preserved for appeal. *Id.* at ¶¶ 10-12.

[¶6] When reviewing the record to determine whether there was sufficient evidence to support a conviction, we do not weigh conflicting evidence or assess the credibility of witnesses. *O'Toole*, 2009 ND 174, ¶ 8. We reverse a conviction for insufficient evidence "only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt." *Id.*

[¶7] A person is guilty of child abuse if the person is "a parent . . . who willfully inflicts or allows to be inflicted upon the child mental injury or bodily injury, substantial bodily injury, or serious bodily injury as defined by section 12.1-01-04 . . . ." N.D.C.C. § 14-09-22(1). At issue here is whether there was sufficient evidence of "mental injury" to support the conviction. Whether there is sufficient evidence to support a conviction first requires us to interpret "mental injury."

[¶8] We review issues of statutory interpretation as follows:

> Statutory interpretation is a question of law. Statutes must be construed as a whole and harmonized to give meaning to related

2

provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence. In construing statutes, we consider the context of the statutes and the purposes for which they were enacted. When a general statutory provision conflicts with a specific provision in the same or another statute, the two must be construed, if possible, so that effect may be given to both provisions. When statutes relate to the same subject matter, this Court makes every effort to harmonize and give meaningful effect to each statute.

*State v. Nupdal*, 2021 ND 200, ¶ 5, 966 N.W.2d 547.

[¶9] Unless defined or explained in the code, a word in a statute is "understood in [its] ordinary sense, unless a contrary intention plainly appears." N.D.C.C. § 1-02-02; *O'Toole*, 2009 ND 174, ¶ 11. Although the code defines the three variations of "bodily injury" in § 14-09-22(1), it provides no corresponding definition for "mental injury." Castleman urges the Court to apply Minnesota's statutory definition of mental injury, which is "an injury to the psychological capacity or emotional stability of a child as evidenced by an observable or substantial impairment in the child's ability to function within a normal range of performance and behavior with due regard to the child's culture." Minn. Stat. § 260E.03, subd. 13 (2020); *see also* Minn. Stat. § 626.556, subd. 2(f) (repealed 2020) (same). The State argues the words are to be understood in their ordinary sense, but offers no definition.

[¶10] During the trial, neither party proposed a definition to include in the jury instructions. The district court did not define "mental injury" in the jury instructions. In response to a question during deliberations about the meaning of "mental injury," the court simply referred the jurors back to the instructions already provided and directed them to apply "their collective understanding." The previously-provided instructions included a pattern instruction directing the jury "in considering the evidence in this case, you may apply to the facts and circumstances matters of common knowledge." We have held a jury, in reaching a verdict, may use any reasonable definition of a common word that is not specifically defined in the instructions. *O'Toole*, 2009 ND 174, ¶ 12.

3

[¶11] In *O'Toole*, we considered a challenge to the sufficiency of the evidence supporting a conviction for reckless endangerment by "creat[ing] a substantial risk of serious bodily injury or death to another." 2009 ND 174, ¶ 9. On appeal, the defendant argued he did not "create" the situation resulting in the risk of injury. *Id.* at ¶ 10. The Court concluded the word was not ambiguous and its plain meaning included a definition found in an ordinary dictionary: "to produce or bring about by a course of action or behavior." *Id.* at ¶ 11 (citing Webster's Third New Int'l Dictionary 532 (2002)). The code did not define the word "create," and no jury instruction was provided to define the term. *Id.* at ¶¶ 11-12. Relying in part on the common knowledge instruction, we concluded: "The jury could use any reasonable definition of the word 'create' in deciding whether O'Toole was guilty." *Id.* at ¶ 12. Reviewing the evidence in the light most favorable to the verdict, we concluded that by applying a reasonable definition of this commonly-used verb, the jury could have found the evidence supported a guilty verdict. *Id.* at ¶ 14.

[¶12] Here we are not presented with a simple action verb in common use for which the jury's common knowledge may yield a widely accepted, reasonable definition. Unlike "create," which we left to the jury's common knowledge of reasonable definitions, or "obtain," to which we applied a similar rule after a bench trial, the term "mental injury" is not a term in common use or for which dictionaries provide definitions consistent with common understanding. *O'Toole*, 2009 ND 174, ¶ 12; *State v. Rufus*, 2015 ND 212, ¶ 19, 868 N.W.2d 534 (applying dictionary definition for "obtain" and concluding it was "broad enough to encompass" the charged conduct). Black's Law Dictionary contains no definition of "mental injury." Neither does Webster's Third New International Dictionary (3d ed. 2002). If broken up into its component parts, "mental" and "injury," the combined term conceivably encompasses any harm relating to the mind, whether brief or lasting, and whether mild or severe. We conclude that "mental injury" is not among the commonly-used words or phrases for which the jury may apply whatever definition it deems reasonable.

[¶13] We have not yet exhausted our tools of statutory interpretation. We read statutes as a whole, reading each section in context with related provisions.

4

*Motisi v. Hebron Pub. Sch. Dist.*, 2021 ND 229, ¶ 13. Section 14-09-22(1), N.D.C.C., refers to both "mental injury" and three variations of "bodily injury." Unlike the undefined term "mental injury," "bodily injury" is defined by reference to the criminal code definition in N.D.C.C. § 12.1-01-04(4). The definition of "bodily injury" expressly includes both "any impairment of physical condition" and temporary physical distress, "including physical pain." But our examination of this parallel definition of bodily injury is inconclusive in determining the plain meaning of "mental injury." Because the bodily injury definition expressly "includ[es] physical pain," in an assault case the element may be satisfied by brief pain resulting from a shove or a kick. *State v. Hamre*, 2019 ND 86, ¶¶ 25-26, 924 N.W.2d 776; *State v. Hannah*, 2016 ND 11, ¶¶ 9-10, 873 N.W.2d 668. A simple conversion of the definition from physical to mental would be one possible way to define mental injury, but it is not obvious that one should determine the meaning of "mental injury" in this way to conclude "'mental injury' means any impairment of *mental* condition, including *mental* pain." Although the legislature could have expressly provided such a definition, it has not. If the legislature intends to criminalize as child abuse a broad swathe of behavior, including any willful act causing a child to cry, it must do so with more specificity than the undefined term "mental injury."

[¶14] In *State v. Vetter*, we considered whether the same statute put a reasonable person on notice of what constitutes child abuse. 2019 ND 262, ¶ 9, 934 N.W.2d 543. In that case, we said "pain," as used in the definition of the term "bodily injury" and applied in the child abuse statute, was to be measured by common understanding and practice. *Id.* (citing N.D.C.C. §§ 14-09-22 and 12.1-01-04(4)). We have identified no comparable common understanding and practice by which a jury may measure "mental injury" or whether brief crying may constitute such an injury.

[¶15] The legislature has also addressed the problem of child abuse in chapter 50-25.1, N.D.C.C. In this chapter, "abused child" is defined as a minor "suffering from abuse as defined in section 14-09-22." N.D.C.C. § 50-25.1-02(3). The cross references between chapter 50-25.1, section 14-09-22, and section 12.1-01-04 provide some indication that child abuse is intended to have the

5

same scope across these disparate provisions addressing the same social problem. *See Simons v. State*, 2011 ND 190, ¶¶ 9-10, 803 N.W.2d 587 (describing the "complex maze" of related statutes). In *Walton v. N.D. Dep't of Human Servs.*, this Court interpreted an earlier version of chapter 50-25.1, which required "serious physical harm" evidenced by "negative changes" resulting from "physical or mental injury." 552 N.W.2d 336, 340-41 (N.D. 1996). Under that standard, we concluded a reasonable person could not find child abuse where the "evidence shows the Waltons struck children with their hands, called the children 'naughty' or 'stupid' and told them they were too big to cry, had arguments in front of the children, and limited the children's use of toilet paper." *Id.* at 341. In *Simons*, we recognized that after *Walton* the standard for child abuse under chapter 50-25.1 had been "significantly lower[ed]" to correspond to the standard for establishing simple assault, which is satisfied by testimony that the victim "suffer[ed] some undefined amount of physical pain." 2011 ND 190, ¶ 14. The legislative amendments described in *Simons* clarified and broadened the scope of child abuse by physical or bodily injury, but they did not resolve the scope of "mental injury."

[¶16] We conclude that the ordinary meaning of "mental injury" as used in § 14-09-22(1) requires mental suffering and trauma that has some lasting, non-transitory effect. This may be shown by evidence of a medical diagnosis, counseling, behavioral changes, or other lasting effects of psychological, emotional, or other mental trauma. Without a clear statutory expression of intent to criminalize willfully causing a child to feel fear, to cry, or to suffer other temporary mental discomfort that might conceivably fall within mental or emotional harm, we cannot conclude that the plain meaning of mental injury sweeps so broadly.

[¶17] Castleman asserts the evidence of brief crying and the lack of any evidence of counseling, medical records, or mental health diagnosis show the child did not suffer a mental injury. The evidence in the record here is limited to the mother's testimony that her daughter was shaking and crying and the audio recording of a few seconds of the child crying. There is no evidence that there was any lasting effect on the child's psychological, emotional, or mental

health. On this record, there is an insufficient evidentiary basis to establish mental injury.

III

[¶18]  We reverse the criminal judgment.

[¶19]  Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte

**McEvers, Justice, concurring.**

[¶20] I agree with, and have signed with the majority that the evidence in this case was insufficient to prove beyond a reasonable doubt that the child had suffered a mental injury based on Castleman's conduct. In other words, the State needed to show more to prove the charge.

[¶21] I would point out, after review of the evidence, including the recording of Castleman assaulting the mother and threatening and verbally abusing her in the presence of the child, this appears to be a classic case of domestic violence which often results in harm to the child. Domestic violence as defined in N.D.C.C. § 14-07.1-01 includes: "physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members."

[¶22] It is not uncommon for children who are raised in violent homes to experience long-term negative emotional, mental or behavioral impacts of domestic violence, even when they are not the target of the abuse. *ND Domestic Violence Benchbook* § 2.5. Children who witness domestic violence may also demonstrate aggressive behavior, depression, or have cognitive deficiencies,

7

and are at greater risk to develop serious health problems. *Id.* None of these potential impacts was demonstrated by the evidence.

[¶23] There is no separately defined crime of domestic violence under North Dakota law unless a crime otherwise defined is committed in the course of domestic violence. If the legislature wants to protect children from domestic violence, perhaps it should include exposure of the child to domestic violence as part of the definition of child abuse.

[¶24] Lisa Fair McEvers
Gerald W. VandeWalle